(7 Misc. Rep. 449.)

## COHEN et al. v. CLEMONS.

(City Court of New York, General Term. March 9 1894.)

ASSUMPSIT—PROTECTION OF INSURED PROPERTY.

> After defendant's goods had been damaged to an extent greatly exceeding the insurance, he delivered them to plaintiff, whose business was to care for and keep goods damaged by fire so as to save them from further damage. *Held*, that defendant was liable to plaintiff for the care of such goods, though he delivered them to plaintiff at the suggestion of a person representing the insurance company that the policy required him to protect goods from further damage.

Appeal from trial term.

Action by Jacob Cohen and others against William F. Clemons. From a judgment entered on a verdict in favor of plaintiffs, defendant appeals. Affirmed.

Argued before VAN WYCK and NEWBURGER, JJ.

Kneeland & Stewart, for appellant.

Steele & Dickson, for respondents.

VAN WYCK, J. The plaintiffs, who frequently take charge of damaged goods from fires, for the purpose of so caring for and treating them as to save them from further damage, sue to recover for services so rendered to a lot of woolen goods belonging to defendant, which were damaged at a fire in defendant's store in Lispenard street, this city, and which were delivered to them by defendant for such purpose. The title and ownership of these goods was in the defendant when so delivered to plaintiffs, and remained in him until and after their redelivery to him by plaintiffs. After the fire, and before the loss for damage by fire had been adjusted between the insurance companies and the defendant, who had insurance for $24,000, and claimed that his goods were damaged to the extent of $40,000, these goods were delivered to plaintiffs by defendant for the purpose of having them so treated and cared for by plaintiffs as to save them from further damage. The defendant was obligated to the insurance companies to so protect these goods under a clause in the policies which provides that, "if fire occur, the insured shall protect the property from further damage." The circumstances under which defendant delivered these damaged goods to plaintiffs are best described by the witness Harris, who was the adjuster for the largest portion of the insurance companies in this loss; and he testified, at folio 141, that he was familiar with the arrangement made between the insurance companies and defendant; that defendant claimed $58,000 as the estimated value of the goods, and his claim of loss was in the neighborhood of $40,000, and that the insurance paid to defendant

was $24,000; that he went to defendant's premises, and he found the goods were rather compact; that there was a great deal of water in the cellar, and he told the defendant that, in accordance with the terms of his policy, he was compelled to protect his goods from further damage, and defendant replied that he had not room to do it in; that afterwards he had an interview with defendant at his office, and suggested to defendant that plaintiffs had an old building upon Pearl street, and that he should go and see them, and that possibly he could hire their building, and do there what the policy provided for; that at the same time he told defendant that it was to his interest to protect the goods, and that, if he estimated their value at $58,000, and the insurance was $24,000, it was to his interest, and that he would give defendant his consent to send them to plaintiffs' place of business; that he had a conversation with defendant, in the presence and hearing of Goldstein, defendant's adjuster, and one of the plaintiffs, as follows:

"We stated, in order to protect Mr. Clemons, [defendant,] he having so much more property than the insurance companies, that it was to his interest to take these goods out of the premises, and Mr. Clemons accordingly agreed to send them to Cohen, [plaintiff.] Then I told Mr. Clemons that if his damage was $40,000, and his insurance was $24,000, Mr. Cohen would get his pay from Mr. Clemons. and that was the understanding. I represented the insurance companies, and I told Mr. Cohen that he never could get any pay from the insurance companies, because the property was so much more than the insurance policies, and also the damage claimed was so much over the insurance, and I told Cohen that I never would pay him, and Mr. Clemons did not demur."

The consent, which Harris told defendant he would give, to have the goods removed to plaintiffs' place, is in writing, signed by the insurance adjusters and the defendant, and is marked in evidence at folio 99, and provides that the goods which defendant delivers to Cohen & Son (plaintiffs) shall be insured, and the "premium therefor to be paid by Clemons, [defendant,] and that the property delivered to Cohen & Son under the above agreement shall not be deemed an abandonment of Clemons' property to the insurance companies, but is in accordance with the terms and conditions of the policies of the companies interested." Clemons, the defendant, was not a witness on the trial, and no denial or contradiction was offered, on his behalf, of the conversations, interviews, or transactions as described by Harris and Cohen as having been had with him personally; and yet his counsel contends that he is not liable to Cohen & Son for their care and treatment of his goods, delivered to them by him with his knowledge, consent, and request that they were to so treat and care for them, and this contention is made upon the ingenuous theory that the rule is "that expenses follow the salvage." Where is the salvage in this case? If it is proper to say that there was any salvage in this case, why, Clemons got it, for he received everything,—his full insurance of $24,000, and all the property which was saved, and not totally destroyed by fire, including his property which plaintiffs' care and treatment of saved from further damage. Clemons did not, for a single instant, lose his control over, title to, or ownership in, the goods delivered by

him to plaintiffs, and by them so cared for and treated, and then returned to him, and is certainly liable, on the facts in this case, to plaintiffs, for the value of their services in such care and treatment. The judge would have been justified in taking away from the jury every question except as to the reasonable value of plaintiffs' services, and the verdict as to this is not against the weight of evidence, and the judgment and order are affirmed, with costs.